IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BRANDON MICHAEL TUBBS                                                    PLAINTIFF

v.                               No. 6:17-CV-06032

GARLAND COUNTY, ARKANSAS, et al.                                       DEFENDANTS

## OPINION AND ORDER

Before the Court is Defendants Garland County, Arkansas, Anthony J. Tart, Eric Wilhite, and Chris Hays's[1] joint motion (Doc. 43) for summary judgment. Defendants have filed a memorandum brief (Doc. 44) and statement of facts (Doc. 45) in support. Plaintiff Brandon Michael Tubbs filed a response (Doc. 50) and a statement of facts (Doc. 51) and memorandum brief (Doc. 52) in support of his response. Defendants filed a reply (Doc. 53). The motion for summary judgment will be granted.

**I.    Facts and Background**[2]

On April 17, 2014, an anonymous source contacted Little Rock Police Department Detective Barry Flannery[3] about a suspicious package being sent from "Calvin Shrader" in Carmichael, California to "Eric Carter" at 14302 Taylor Loop Road in Little Rock, Arkansas. Flannery contacted UPS central region security representative Kim Taylor[4] about the package. Taylor advised Flannery that the intended recipient had redirected the package from the Little Rock

---

[1] "Hays" is misspelled "Hayes" in the complaint and in many other documents filed in this litigation. Defendants' pretrial disclosures (Doc. 57) make it clear that the correct spelling of his surname is "Hays."

[2] The Court has viewed all properly-supported facts asserted by Tubbs, and the reasonable inferences to be drawn from those facts, in a light most favorable to Tubbs's case. *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 656–57 (8th Cir. 2001).

[3] The Court previously dismissed Tubbs's claims against Flannery with prejudice. (Doc. 36).

[4] The Court previously dismissed Tubbs's claims against Taylor with prejudice. (Doc. 36).

delivery address to 1120 Lakeshore Drive, Hot Springs National Park, Arkansas.

At that time, 1120 Lakeshore Drive was a rental property owned by Joe Calhoun and leased to Tubbs. Tubbs's girlfriend, Meiaca Black, and her daughter lived with him at the property. Tubbs also allowed Steven Swannigan—the son of a couple from Tubbs and Black's church—to use the spare bedroom on a temporary basis, starting in early 2014. Swannigan had been released from prison and did not want to stay with his parents. He primarily stayed with girlfriends, but kept property in Tubbs's spare bedroom, returning only to get clothes.

Following the communication between Flannery and Taylor, UPS pulled the package aside and held it from delivery. A law enforcement K-9 unit was dispatched from the Cammack Village, Arkansas Police Department. The package was placed among an assortment of other packages, and the K-9 indicated that the package addressed to Eric Carter contained narcotics. A search and seizure warrant was issued for the package, which was opened. The package contained approximately 1.41 pounds of methamphetamine.

Members of the 18th Judicial District East Drug Task Force ("Drug Task Force") formulated a plan in which a member of the Little Rock Police Department narcotics squad would make an undercover delivery of the package, containing a representative quantity of methamphetamine, to the 1120 Lakeshore Drive address, and require a signature for acceptance. Following delivery, law enforcement would secure the premises, execute the search warrant, and arrest Eric Carter. The plan is detailed in the most relevant portion of the affidavit in support of the search warrant:

> Affiant Flannery prepared a search and seizure warrant for the package and the warrant was reviewed and signed by the Honorable Judge Alice Lightle. The affiant opened the package and found it to contain approximately 1.41 pounds of methamphetamine inside the package.
>
> A plan has been formulated by members of the 18th Judicial District East Drug

> Task Force in which a member of the Little Rock Police Department Narcotics Squad will deliver the package addressed To: Eric Carter, 1120 Lakeshore Drive, Hot Springs National Park, Arkansas, 71913, and displaying tracking number 1ZVY28500166020017. Affiant Hays placed a representative sample of methamphetamine inside the package with a weight of approximately 1 ounce. At the time of delivery, the undercover Detective will have the person sign for acceptance for the package at the residence. After the package is delivered, members of the Hot Springs Police Department SWAT team will secure the residence and occupants at 1120 Lakeshore and the 18th Judicial District East Drug Task Force, Little Rock Police department [sic] and the DEA will execute the Search Warrant and arrest the person who identified himself or herself as the person to whom the parcel was addressed.

(Doc. 45, p. 2). Flannery and hays applied for a warrant to effect this plan, and the Honorable Lynn Williams, Judge of the Circuit Court of Garland County, Arkansas, issued a search warrant on April 18, 2014.

Later that day, the Drug Task Force and other law enforcement officers began executing the plan. An undercover officer from the Little Rock Police Department narcotics squad, disguised as a delivery driver for UPS, drove with the package to 1120 Lakeshore Drive, while other officers waited away from the residence. When the undercover officer arrived, Tubbs was outside mowing his lawn. The undercover officer approached Tubbs bearing the package, and asked if he was Eric Carter. Tubbs replied he was not, and suggested that the undercover officer might have the wrong address. The undercover officer said Tubbs's address was on the package. Tubbs identified himself and said he was the one who lived at 1120 Lakeshore Drive, and he did not know Eric Carter. The undercover officer handed the package to Tubbs and told him to sign for it. Tubbs knew that one of Swannigan's girlfriends was expecting a package of books, and told the undercover officer that the package seemed too light to be books. The undercover officer told Tubbs multiple times to sign for the package. Despite his initial refusal to do so, Tubbs eventually accepted the package, signing his own name and placing the package on the porch, intending either to give it to Swannigan's girlfriend or return it to UPS. Tubbs then went back to mowing.

The undercover officer communicated to the rest of the law enforcement team that the package had been delivered. A few minutes later, a van pulled up and the SWAT team and other law enforcement officers began to execute the search warrant. Tubbs was directed to the ground at gunpoint. Arkansas State Police Trooper Scotty Dodd[5] then handcuffed Tubbs, and officers breached the front door at 1120 Lakeshore Drive, deployed a flashbang grenade to the interior, and entered, taking the package and Tubbs inside. Dodd, along with Hays and Wilhite, took Tubbs to the living room and interrogated him. Dodd threatened Tubbs with excessive prison time and prison rape during the interrogation, while Dodd, Hays, and Wilhite continued to ask questions about criminal activity. Tubbs was also asked about Swannigan, and suggested the package might be his.

While Tubbs was interrogated, remaining law enforcement officers searched the house. Tubbs was the only person there. Officers found several firearms and ammunition, including a handgun which belonged to Tubbs in the master bedroom. The remainder of the firearms were found in the spare bedroom used by Swannigan. Officers also found two mobile phones, a number of pills, and a yellow cup containing a white crystal substance that tested positive for methamphetamine. The controlled substances were found in the spare bedroom. During the search, officers found business papers and various pieces of mail addressed to either Tubbs or Black. None bore Swannigan's name.

Officers had Tubbs attempt a call to Swannigan to tell him the package had arrived. Swannigan denied knowledge of any package and hung up. When Tubbs called back, Swannigan again hung up.

---

[5] Dodd was sued in his official capacity only, and the Court previously dismissed those claims without prejudice on the basis of sovereign immunity. (Doc. 36).

Tubbs was arrested, taken to Garland County jail, and charged by information in the Circuit Court of Garland County, Arkansas with Trafficking a Controlled Substance, Simultaneous Possession of Drugs and Firearms, and Unauthorized Use of Another Person's Property to Facilitate Certain Crimes. Tubbs bonded out on April 22, 2014, and the charges were nolle prossed on March 9, 2015.

Tubbs filed the instant lawsuit under 42 U.S.C. § 1983 on March 24, 2017, claiming that Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights when they arrested him and searched his home. Tubbs also asserts state law claims for violations of the Arkansas Civil Rights Act (ACRA) and for the torts of outrage and negligence.

## II. Law

### A. Summary Judgment Standard

When a party moves for summary judgment, it must establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). In order for there to be a genuine issue of material fact, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson*, 477 U.S. at 248. "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001) (citation omitted). Facts asserted by the nonmoving party "must be properly supported by the record." *Id.* at 657.

### B. Title 42 U.S.C. § 1983 Standard

"Section 1983 imposes civil liability on any person who, 'under color of any statute, ordinance, regulation, custom or usage of any State,' deprives an individual of 'any rights, privileges, or immunities' secured by the United States Constitution." *Lund v. Hennepin Cty.*, 427 F.3d 1123, 1125 (8th Cir. 2005). "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Cooksey v. Boyer*, 289 F.3d 513, 515 (8th Cir. 2002). For an official capacity claim to survive summary judgment, the plaintiff must also show that the constitutional injury was caused by official policy or custom, the implementation of which amounted to deliberate indifference to constitutional rights. *Lund*, 427 F.3d at 1125.

### III. Analysis

All of Tubbs's federal claims are brought against Defendants in their official capacities, only. *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (reiterating longstanding presumption that § 1983 claims are brought against defendants only in their official capacities unless the complaint specifically states otherwise). Tubbs was given an explicit invitation to amend his complaint to include individual capacity claims. (Doc. 36). Because he declined to do so, it is clear that he pursues only official capacity claims. To succeed, Tubbs must show that an official policy or custom resulted in a violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1977) (explaining § 1983 liability attaches to government officials

acting in their official capacity only for constitutional deprivation resulting from execution of official policy or custom). Tubbs cannot make this showing because he cannot show that his constitutional rights were violated.

Many of Tubbs's federal claims are doomed from the outset, as his responses to the motion and statement of facts implicitly recognize by declining to address Defendants' arguments against those claims. Tubbs's responses focus on the denial of his Fourth Amendment rights surrounding the search of his home, the initial seizure of his person, and his arrest following the search, and ignore Defendants' arguments on his other federal claims.

With respect to his other § 1983 claims, premised on violations of the Fifth, Sixth, Seventh, and Eighth Amendments, Tubbs has raised no genuine dispute of fact that demonstrates he suffered any violation of the rights secured by those amendments. There are no federal actors involved. *See Warren v. Gov't Nat'l Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980) (explaining that Fifth Amendment due process clause applies to federal government while Fourteenth Amendment due process clause applies to states). Tubbs was never made to incriminate himself. *See Miranda v. Arizona*, 384 U.S. 436, 467 (1966) ("[T]here can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves."). Tubbs was never denied representation after charges were filed. *See Kansas v. Ventris*, 556 U.S. 586, 591 (2009) (explaining core of Sixth Amendment right is a trial right, but it covers pretrial interrogations to ensure a defendant is not deprived of effective representation); *Texas v. Cobb, 532 U.S. 162, 167–68 (2001)* (explaining that the Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings"). Because the charges were nolle prossed, the criminal prosecution ended, no trial

was held, and Tubbs was not denied a jury trial under the Sixth Amendment. This was entirely a criminal matter, and not a civil matter or "suit at common law," so Tubbs was not denied any Seventh Amendment rights. Tubbs was never convicted, so the Eighth Amendment prohibition of cruel and unusual punishment is inapplicable. *Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes.'" (quoting *Ingraham v. Wright*, 430 U.S. 651, 664 (1977))). Tubbs was able to bond out of jail, and makes no argument that bail was excessive under the Eighth Amendment. Judgment for Defendants is proper on all of Tubbs's § 1983 claims premised on a violation of the rights secured by these amendments.

Judgment for Defendants is also proper on Tubbs's § 1983 claims premised on violations of his Fourteenth Amendment substantive due process rights surrounding the search and his arrest. The Supreme Court of the United States "held in *Graham v. Connor*, 490 U.S. 386 (1989), that '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting plurality opinion in *Albright v, Oliver*, 510 U.S. 266, 273 (1994)). The Fourth Amendment provides an explicit textual source of constitutional protection against unreasonable searches and seizures, including any pretrial detention continuing beyond the initial arrest. U.S. Const. amend IV; *Manuel v. City of Joliet, Ill.*, 580 U.S.--, 137 S.Ct. 911, 920 (2017) ("[T]he Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process.").

All that is left for analysis are Tubbs's § 1983 claims premised on violations of his Fourth Amendment right to be free from unreasonable search and seizure. There is no dispute that

Defendants were acting under color of state law when they seized Tubbs and searched his home, so the Court's analysis focuses on whether Defendants' conduct deprived Tubbs of a constitutionally protected federal right; and if so, whether the deprivation was caused by official policy or custom. Because the process leading to Tubbs's arrest began with execution of the search warrant, the Court will also begin with the search warrant.

### A.     Whether the Search of 1120 Lakeshore Drive was Reasonable

The Fourth Amendment requires that searches conducted by law enforcement must be reasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). Searching a home without a valid search warrant is presumptively unreasonable. *Id.* For a warrant to be valid, it must be supported by probable cause. *Id.* "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Tubbs argues that the warrant executed at 1120 Lakeshore Drive was not supported by probable cause because it was an anticipatory warrant and the triggering condition never occurred.

A warrant is anticipatory when its execution is subject to a condition precedent. *See Grubbs*, 547 U.S. at 94 ("Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'").

> [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," . . . but also that there is probable cause to believe the triggering condition *will occur*.

*Id.* at 96–97 (citation omitted).

The search warrant issued by for 1120 Lakeshore Drive was anticipatory. The warrant itself does not specify the triggering condition. (Doc. 45-5). However, the triggering condition

need not be included for the warrant to satisfy the particularity requirement for validity. *Grubbs*, 547 U.S. at 98. The triggering condition is found in the execution plan contained within the affidavit Hays and Flannery submitted in support of their application for a search warrant: "At the time of delivery, the undercover Detective will have the person sign for acceptance for the package at the residence. *After the package is delivered . . .*" the search warrant will be executed. (Doc. 54-4, p. 2 (emphasis added)). Based on the fact that the intended recipient of a package containing methamphetamine asked UPS to change the delivery address of that package to 1120 Lakeshore Drive, there was probable cause to believe that a person at 1120 Lakeshore Drive would sign to accept delivery of that package. But only if the package containing methamphetamine was accepted by a person at 1120 Lakeshore Drive would there be probable cause to believe that the premises contained all of the controlled substances and other listed items associated with distribution.

Tubbs argues that the triggering condition was not that the package be accepted by "a person," but that it be accepted by "Eric Carter." Tubbs's argument is based on the supporting affidavit's explanation that officers also planned to arrest any individual who identified himself as Eric Carter. This is an overly restrictive reading of the warrant, which is supported by sufficient probable cause on a less restrictive reading. As Tubbs himself rhetorically suggests, it is not irregular for a person to sign his own name to "accept[] a package addressed to someone else." (Doc. 52, p. 5). In reality there was no Eric Carter at 1120 Lakeshore Drive, but had there been, and had Tubbs signed to accept a package for his roommate—indeed, had Eric Carter been sitting on the porch at the time of delivery and asked Tubbs to sign for the package, and had Tubbs then signed for the package—under Tubbs's interpretation of the warrant the triggering condition would not have occurred. The certainty of identity Tubbs would require for probable cause is far in excess

of the standard. *Hill v. California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . .").

Though he did not want to and was pressured to do so, Tubbs innocently signed for the package, expecting that he might be receiving books on behalf of Swannigan's girlfriend, or that it was simply a mistaken delivery that he would later return to the shipper. But Tubbs's actual innocence and ignorance of the true contents of the package when he accepted it on behalf of the addressee, and his hesitancy to accept a package not addressed to him or anyone he knows, do not eliminate any probable cause law enforcement officers had to believe that 1120 Lakeshore Drive was the location of a drug trafficking operation once a person at that address accepted delivery of a package containing methamphetamine. Signature for and acceptance of the package by a person at the address was the triggering condition, and the triggering condition occurred. At that point, the search warrant was supported by probable cause, and its execution was reasonable.

Because Tubbs cannot show a violation of his Fourth Amendment right to be free from unreasonable searches, judgment for Defendants is proper on Tubbs's 42 U.S.C. § 1983 claims premised on an unreasonable search.

**B.     Whether the Seizure of Brandon Tubbs was Reasonable**

The Fourth Amendment requires that seizures by law enforcement must be reasonable. *District of Columbia v. Wesby*, --U.S.--, 138 S.Ct. 577, 585 (2018) ("Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances."). Detention of the occupants of a premises during execution of a valid search warrant for that premises is categorically reasonable. *Muehler v. Mena*, 544 U.S. 93, 98 (2005). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect has committed a crime in the officer's presence." *Id*. at 586. Probable cause is not a high bar, and the determination of probable cause depends on whether

the events leading up to the arrest, viewed from the standpoint of an objectively reasonable officer, give rise to a probability or substantial chance of criminal activity. *Id.* The reasonableness of continued pretrial detention even beyond the start of legal process is similarly based on whether probable cause exists to detain. *Manuel*, 137 S.Ct. at 919–20.

Because the search warrant for 1120 Lakeshore Drive was valid, Tubbs's detention during execution of that warrant was a seizure that was categorically reasonable under the Fourth Amendment.

The affidavit in support of the warrant indicated that law enforcement officers intended to arrest Eric Carter—"the person who identified himself or herself as the person to whom the parcel was addressed" (Doc. 45-4, p. 2)—if he was at the premises during execution of the warrant. Tubbs is not Eric Carter, and adamantly and consistently has denied knowing who Eric Carter is. A person identifying himself as "Eric Carter" was not on the premises.

However, the circumstances at the time of the search establish probable cause for an objectively reasonable officer to believe that Tubbs was committing a crime. Methamphetamine was addressed for shipment to 1120 Lakeshore Drive, and Tubbs signed for the package at the time of delivery and placed the package on the porch of the residence. During execution of the search of that address, officers found a yellow cup containing a white crystal substance that field-tested positive for methamphetamine, several firearms and assorted ammunition, a number of pills, and cell phones. With the exception of a .40 caliber Smith & Wesson handgun, which was found in Tubbs's room, these items were found in Swannigan's room, and none belonged to Tubbs. However, Swannigan rejected phone calls Tubbs made in the presence of officers inviting Swannigan to come get the package containing methamphetamine. Officers also found mail and papers indicating that Tubbs and Black were residents at 1120 Lakeshore Drive, and did not find

any documentation that Eric Carter, Swannigan, or any other person lived there. Tubbs was the only person at the residence when officers arrived to execute the warrant. It is not impossible, and may even be likely, for a person who receives unlawful controlled substances through the mail to use an alias for shipment of those substances. Tubbs did not own the real property at 1120 Lakeshore Drive.

An objectively reasonable officer confronted with these circumstances would have probable cause to believe Tubbs was violating Arkansas law—specifically, those statutes that prohibit trafficking of a controlled substance, simultaneous possession of drugs and firearms, and use of another person's property to facilitate certain crimes. The arrest of Tubbs following execution of the search warrant of his property was supported by probable cause, and was therefore reasonable under the Fourth Amendment. Neither party has identified any change in the circumstances establishing probable cause to arrest Tubbs between his arrest on April 18, 2014, and his bonding out of jail on April 22, 2014. His continued seizure during that time was still supported by probable cause, and was therefore reasonable under the Fourth Amendment.

Because Tubbs cannot show a violation of his Fourth Amendment right to be free from unreasonable seizure, judgment for Defendants is proper on Tubbs's 42 U.S.C. § 1983 claims premised on an unreasonable seizure.

### C. State Law Claims

Because the Court is dismissing all the claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over Tubbs's state law claims, and those claims will be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Gibson v. Weber*, 431 F.3d 339, 341–42 (8th Cir. 2005) (recognizing discretion of district courts to decline to exercise supplemental jurisdiction over state law claims following dismissal of federal claims, even where statute of

limitations bars refiling); *Labickas v. Ark. State Univ.*, 78 F.3d 333, 334–35 (8th Cir. 1996) (modifying dismissal of state claims under 28 U.S.C. § 1367 to be without prejudice).

**IV.     Conclusion**

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Doc. 43) is GRANTED and Plaintiff's 42 U.S.C. § 1983 claims against Defendants Garland County, Arkansas, Anthony J. Tart, Eric Wilhite, and Chris Hays are DISMISSED WITH PREJUDICE. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE. Judgment will be entered separately.

IT IS SO ORDERED this 9th day of March, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE